Bay, J.
delivered the opinion of the Court.
I have considered the foregoing case under its different bearings, and have no hesitation in saying, it was a very proper case for the interposition and consideration of a Court of Equity, where full and complete justice could have been done to all the parties concerned. But as it has come up before this Court, we are obliged to dispose of it in the best manner we can, agreeably to common law rules.
1st. Under the first ground, then, it appears to me absolutely necessary, in a great variety of cases, where bonds and mortgages have been given to secure large and eonsidei’able sums of money, and where transfers have been made of some of the specialties so secured, and either full or partial payments have been made on them, for the Court to examine into and investigate them, previously to making any final and decisive order concerning the sums really due and owing to the parties interested ; and in doing so both parties, plaintiffs and defendants, have an equal claim on the justice and indulgence of the Court, and facts ought to be well ascertained before the rigours of the law are finally enforced. In this *149 case a very considerable sum of money was dernanded of the sheriff by Mrs. Jones, and it was •• ' J \ . . contended on her behalf, that'the satisfaction entered by Mr. Champneys on the judgment was fraudulent as to her bond, and that it could only be construed pro tanto ; and however it might operate as to the other three bonds, if could riot as to Mrs. Jones's, as it was alleged that it was assigned ‘ before the satisfaction was entered; and in order to prove this fact, a witness was called to prove that it was previously assigned — so that, so far Mrs. Jones had the benefit of Mr. Kerr's testimony.
. Mr. Duncan, the subsequent' mortgagee, and next in order, had also an interest in the money in the sheriff’s hands,- ánd he, on his part, allegedfhat the whole, or thé greatest part, of Mrs. Jones's bond, had been paid off, and wished to exáinine Mr. Kerr on this subject, and to produce the affidavit of Mr. Champneys; but this privilege was refused, and the whole of the money was ordered to be paid over to Mrs. Jones, without hearing the other party. ' -
It appears to me, therefore, whatever objections there might have been to the affidavit of Mr. Champneys, (and I am rather inclined to think his testimony was exceptionable,) there could be none to Mr. Kerr's. See Gantry and Sumpter's case, 1 Bay. Upon this first ground, therefore, I think this decision was premature, without fully examining into the nature of their *150 payments. "With respect to the right of appeal, which is the
2d ground, I beg leave to observe, that the Constitution has placed this right of appeal upon a very broad basis. It appear^ to me to be circumscribed by nothing but such circumstances as are absolutely necessary for the despatch of business in the due course of the administration of justice; and without which the laws could hot be duly and speedily executed. To suffer appeals in such cases would be to destroy the energy of the law at every stage, and to defeat the very ends and designs for which all laws were formed. Under this head I would be understood to mean and intend all legal proceedings in a Court of Justice before verdict or judgments; all refusals in persons attendant on a Court of J ustice to do and perform their duties, and in paying proper obedience to the rules of the Court; all open and indecent behaviour in a Court of Justice; all cases of bail; and in restraint of freedom, and in many other instances which at this time it is unnecessary to enumerate, but which may be found under the head of Con-tempts, and other appropriate titles, in all the books upon that subject. But in all cases where the great and fundamental rights of the citizens are eventually concerned, or the rules of property involved, these are secured by the Constitution to every citizen; and tire right of appeal is, in my opinion, inviolably secured. h ’ present appears to me to be one of that description, and *151 I therefore will not enlarge further upon this subject.
Attachment against the Sheriff far omission of duty is in the nature of criminal procedure, and is at the suit of the State. Butparty injured has also civil remedy.
3. The third ground is one of practice, and ought to be well understood, and well defined, as well for the benefit of the suitors in Court, as for the information of the sheriffs of the country. It is certainly the duty of a sheriff, as well as every other officer, who undertakes the duties of an office, to perform them faithfully and punctually.; and if he does not do those duties, then he. becomes responsible. This responsibility is of a twofold nature: to the state as a public officer, and to the individual who suffers by his misconduct. To the state he is responsible for not performing the duties of his office; and, therefore, this rule was brought against. the sheriff, very properly in the name of the state, and the case placed on the docket of state cases; and the proceedings are usually in a summary manner, by attachment at the suit of the state. To the individual he is liable by action at law, for consequential damages, in all cases .of neglect, or omission in office, in which a Jury will give a verdict, commensurate with the nature of the injury the defendant has sustained by the misconduct of the sheriff! In all cases, however, where the Tacts of the ease are plain and obvious, and where they can be ascertained to a great degree of certainty, and it is evident and notorious that a sheriff has been negligent, or obviously refuses to do his duty, (Hob. 62, 264,) in such cases the *152 Court will, for the sake of speedy justice, punish by attachment. Noy, 101, F. N. B. 38. But, in and difficult cases depending on law or f^ct, or on both combined, the Court will leave the parties to their remedies at law, when an opPortunity be afforded of fully investigating those facts and circumstances, agreeably to the ru^es of law, and where each party will have justice meted out to them by the country. 1 B. C. Rep. 6. 1 Bac. 283.
a^uinvoiTCdhing£HB summary “mide ?ytoehueremedy ¿y regular suit
Mode of proceeding on attachments.
Attachments are usually applied for on a rule, in the first instance,* calling on the party to show cause why an attachment should not issue. This rule is predicated upon an idea that probably the party may not be guilty of the contempt complained of, and that he may have some good reasons for not performing what is alleged against him. It is founded upon the immutable principles of justice, and the nature and reasons of things, as no man ought to be condemned without a hearing, however summary the proceedings may be, and in some cases interrogatories are propounded, that the party called upon may have an opportunity of answering them. 1 Bac. 286. If, upon the coming in of this rule, no good cause is shown by such party, or if he refuses to answer the interrogatories propounded, then a rule may be made for the attachment to issue, unless the *153 party will perform the duty required; but this is seldom done without giving the person a reasonable time to perform this duty before the attachment issues for imprisoning his body,, which is done upon the humane supposition that the party. did not wilfully or designedly offend against the laws of his country, or the rules and practice of the Courts, but through excess of caution or doubts respecting his duty on that particular occasion.
Yancey and Drayton, for the motion.
Gadsden, contra.
tjpon the whole, therefore, I am ..of opinion that, the proceedings in this case against the sheriff should be set aside, and that the parties, should be left to their ulterior remedies for and against each other.
. The other Judges concurred, except Mr. Justice. Colcock, who wasabsent in the District Court when this case was argued, and. gave no opinion»,

 This mode is now imperative in all cases of contempt whatsoever, by an act “ to prevent any citizen of tliis state from being sent to gaol, until he be heard by himself or counsel,” passed 21st December, 1811.